UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TRACY JODETTE AUGUST, #714643,

                Petitioner,

                                  CASE NO. 2:11-CV-11717
v.                               HONORABLE PAUL D. BORMAN

MILLICENT WARREN,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.**    **Introduction**

Michigan prisoner Tracy Jodette August ("Petitioner") has filed a *pro se* petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that she is being held

in violation of her constitutional rights.  She was convicted of unarmed robbery, MICH.

COMP. LAWS § 750.530, following a jury trial in the Muskegon County Circuit Court in

2008 and was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to 9

to 22 years imprisonment in 2009.

In her pleadings, Petitioner raises claims concerning the admission of other acts

evidence, the validity of her sentence, the prosecutor's reference to anticipated testimony

by a witness who did not appear, witness intimidation by the prosecutor, the admission of

evidence without a foundation or chain of custody, witness tampering, a time limit on jury

voir dire, the right to counsel of choice, and the effectiveness of trial counsel.

Respondent has filed an answer to the petition contending that it should be denied. For

the reasons set forth, the Court finds that Petitioner is not entitled to federal habeas relief

on her claims and denies the petition. The Court also denies a certificate of appealability

and denies leave to proceed *in forma pauperis* on appeal.

## II.   <u>Facts and Procedural History</u>

Petitioner's conviction arises from a shoplifting incident that occurred at a J.C.

Penney store at the Lakes Mall in Muskegon, Michigan in January, 2008. The Court

adopts the facts set forth by the Michigan Court of Appeals on direct appeal, which are

presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*,

581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> In January 2008, J.C. Penney loss prevention employee Wendy Hendryx
> noticed August while watching a video surveillance feed. Hendryx noticed
> August because August was carrying a bag, pressed flat underneath her
> coat. Hendryx watched as August selected some articles of clothing from
> the racks, including two $200 suits. August then walked into a fitting
> room area. Hendryx called the training supervisor, Judy Field-Lampman, for
> backup. Field-Lampman took over monitoring the surveillance feed, and
> Hendryx headed to the fitting room area.
>
> On arriving at the fitting room area, Hendryx confirmed August's location
> within one of the fitting rooms and then busied herself cleaning up
> merchandise from the fitting room area. August remained in the fitting
> room for approximately 10 minutes. When August exited the fitting room,
> she had an armful of clothing, which she placed on a rack and then left the
> fitting room area. Hendryx then saw that the bag August had been carrying
> was no longer flat, but instead was "pretty full. It was round and full."
>
> After August left the immediate area, Hendryx entered the fitting room area
> to check whether August had left all of the merchandise behind. According

2

to Hendryx, August's fitting room was empty, and hanging on the rack were a few shirts and one suit. Hendryx noted that the second suit and several shirts that she had seen August enter the fitting room with were not present. Hendryx then called Field-Lampman and advised her that she believed August "has our merchandise." Hendryx testified that, while Field-Lampman continued to monitor August via the surveillance feed, she double-checked the fitting room area to confirm her suspicions. No stop was made at that point, however, because store policy was to wait to stop suspected shoplifters "right outside the store" in order to give them a chance to either pay for the items or put them back.

Hendryx and Field-Lampman watched August as she purchased a pair of clearance shoes and then continued to browse through the store. Finally, August headed to the store exit that led into the adjacent mall area. Hendryx testified that the bag August was carrying was still as full as it had been when she left the fitting room and that she had not seen August "dump" any of the missing items.

As August exited the store, Hendryx approached her. Hendryx was dressed in plain clothes. But she testified that she identified herself as J.C. Penney security and asked August to come back into the store. According to Hendryx, August first asked, "why?," then said, "no," and then ran away. Hendryx gave chase and told August that she was calling the police. August responded, "I don't care." Hendryx chased August to the area just outside the mall entrance, where she was finally able to grab the bag that August was carrying. August then began yelling and wrestling with Hendryx over the bag. During the altercation, August punched Hendryx in the face. At that point, the bag ripped open and the stolen merchandise fell to the ground. August then ran into the parking lot, got into a truck, and drove away. Hendryx was able to report the license plate number to the police. Police later arrested August.

August testified that she entered the J.C. Penney store on the day in question with several items in a bag. August claimed that the bag she was carrying contained a suit, some shirts, and a make-up bag, which contained the receipts for these items. She claimed that she brought the items with her because she was either going to exchange them or find an undergarment to wear underneath the suit for an interview she had later that day. August claimed that she left the store without making any exchanges because she did not think she had enough time before her interview. August

3

acknowledged that Hendryx stated that she needed to talk to her, but August declined because she was in a hurry to get to her interview. August denied that Hendryx identified herself as a J.C. Penney employee. According to August, she continued walking to the mall exit, where she was suddenly jumped from behind. She denied hitting Hendryx, but admitted to trying to defend herself because she thought Hendryx was a mugger. August claimed that she lost the make-up bag containing the receipts during the scuffle with Hendryx.

After trial, the jury found August guilty of unarmed robbery.

*People v. August*, No. 290472, 2010 WL 2506731, *1-2 (Mich. Ct. App. June 22, 2010) (unpublished).  The trial court subsequently sentenced her as a fourth habitual offender to 9 to 22 years imprisonment.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including those presented on habeas review.  The Michigan Court of Appeals denied relief and affirmed her conviction and sentence.  *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. August*, 488 Mich. 995, 791 N.W.2d 443 (2010).

Petitioner thereafter filed her federal habeas petition raising the following claims:

I.      The trial court violated her state and federal constitutional rights by admitting other act evidence.

II.     The trial violated her state and federal constitutional rights by scoring Offense Variable 19 at 15 points.

III.    The trial court violated her state and constitutional rights by failing to take into account all mitigating evidence at sentencing.

IV.     The trial court violated her state and federal constitutional rights by

4

sentencing her as a fourth habitual offender.

V.      The trial court violated her right to confront witnesses by allowing the prosecutor to introduce the substance of inadmissible hearsay of a witness who failed to testify at trial.  Trial counsel was ineffective for failing to object or request a mistrial.

VI.     She was denied her due process right to present a defense when the prosecutor intimidated and threatened a defense witness and the trial court failed to offer the witness an attorney so she would not be afraid to testify.

VII.    She was denied due process when the trial court admitted unauthorized evidence with no foundation and no chain of custody.

VIII.   She was denied her constitutional rights when one witness tampered with another witness.

IX.     She was denied due process when the trial court limited jury voir dire to one hour.  Trial counsel was ineffective for failing to object, request a continuance, or discuss the matter with her.

X.      She was denied her constitutional right to retain counsel of choice when the trial court forced her to go to trial with appointed counsel and she was in the process of retaining new counsel and the trial court refused to inquire into the matter upon request.

XI.     She was denied her right to present a defense and counsel was ineffective for refusing to call exculpatory witnesses, failing to interview and subpoena witnesses, and failing to renew an expired witness list.

XII.    She was denied her constitutional right to a fair trial and counsel was ineffective for failing to present exculpatory video evidence which would have impeached a prosecution witness's testimony.

XIII.   She was denied the effective assistance of counsel where counsel failed to impeach witnesses, failed to communicate, forced her to testify, failed to call exculpatory witnesses, failed to object to witness tampering, failed to object to prosecutorial misconduct, failed to present exculpatory video evidence, failed to object to

witness intimidation, failed to object to the limitation on jury voir dire, failed to object to the lack of chain of custody, failed to object to improper evidence, failed to object to lost evidence, failed to request an adjournment, failed to present exculpatory evidence, failed to communicate a *Cobbs* offer, failed to review the pre-sentence report with her and present mitigating evidence at sentencing, failed to object to the scoring of sentencing variables, and where counsel acted unprofessionally, and based upon cumulative error.

XIV. The trial court violated her state and federal constitutional rights by scoring Offense Variable 3 at 10 points.

Respondent has filed an answer to the petition contending that it lacks merit.

## III.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

the following standard of review for federal habeas cases filed by state prisoners:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a

set of facts that are materially indistinguishable from a decision of [the Supreme] Court

6

and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so

8

long as neither the reasoning nor the result of the state-court decision contradicts them."
*Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the
requirements of "clearly established law" are to be determined solely by Supreme Court
precedent, the decisions of lower federal courts may be useful in assessing the
reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th
Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v.
Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas
review.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only
with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.
1998).  Moreover, habeas review is "limited to the record that was before the state
court."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.   <u>Discussion</u>

### A.   **Admission of Other Acts Evidence (Habeas Claim I)**

Petitioner asserts that she is entitled to habeas relief because the trial court erred
in admitting other acts evidence concerning a March, 2005 shoplifting incident at a
Meijer store.  The Michigan Court of Appeals denied relief on this claim, finding that the
evidence was properly admitted under state law as evidence of a common plan or scheme
and that Petitioner had not shown a violation of her state or federal constitutional rights.
*August*, 2010 WL 2506721 at *2-4.

The state court's decision is neither contrary to Supreme Court precedent nor an

9

unreasonable application thereof.  A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Alleged trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan law, she merely alleges a state law violation which does not justify federal habeas relief.  *Bey*, 500 F.3d at 519.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis*, 497 U.S. at 780; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of other acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *Dowling v. United States*, 493

10

U.S. 342, 352-53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id*. at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, she is not entitled to relief. She has not shown that the admission of the other acts evidence rendered her trial fundamentally unfair. The other acts evidence was relevant and admissible on the issue of a common plan or scheme under Michigan Rule of Evidence 404(b). The prosecution did not make an improper propensity argument at trial – and the trial court instructed the jury on the proper consideration of the evidence. Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has failed to establish that the admission of the other acts evidence was erroneous or, more importantly, that it rendered her trial fundamentally unfair. Habeas relief is not warranted on this claim.

## B.   Sentencing (Habeas Claims II, III, IV, XIV)

Petitioner raises several sentencing claims in her pleadings. Specifically, she

11

alleges that the trial court erred in scoring Offense Variables 19 and 3 of the state sentencing guidelines, in failing to consider all mitigating evidence, and in sentencing her as a fourth habitual offender. The Michigan Court of Appeals denied relief on the claims finding that Petitioner failed to properly preserve her scoring claims, but that the offense variables were nonetheless properly scored, that Petitioner had abandoned her mitigation argument because she failed to provide factual support, and that the fourth habitual offender sentence was proper. *August*, 2010 WL 2506721 at *5

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, the Court notes that Petitioner's sentence is within the statutory maximum of life imprisonment for a fourth habitual offender. *See* MICH. COMP. LAWS §§ 750.530, 769.12. A sentence within the statutory limit is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner has made no such showing. Her sentence is within the statutory maximum set by state law.

Moreover, Petitioner cannot prevail on her claim that the trial court erred in scoring certain offense variables under the state sentencing guidelines. Such a claim is not cognizable on federal habeas review because it is a state law claim. *See Howard v.*

12

*White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.");

*Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov.19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Any error in scoring the variables and determining the guideline range does not merit habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived state law errors. *Estelle*, 502 U.S. at 67-68.

Petitioner similarly cannot prevail on her claim that she is entitled to habeas relief because the trial court failed to consider all of the mitigating evidence. There is no constitutional requirement that a court consider mitigating evidence at sentencing in non-capital cases. *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002). The Supreme Court has limited its holding concerning mitigating evidence to capital cases. *See, e.g., Alvarado v. Hill*, 252 F.3d 1066, 1069 (9th Cir. 2001) (citing *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991)).

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United*

13

*States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).  To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.  *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v.* Jabe, 803 F. Supp. 70, 81 (E.D. Mich. 1992).  Petitioner has not done so.  The record reflects that the trial court considered the circumstances of the crime, Petitioner's history and the pre-sentence reports, and other permissible factors at sentencing.  Petitioner had an opportunity to contest the accuracy of the reports, to present mitigating evidence, and to make a statement at sentencing.  She has failed to establish that the trial court relied upon materially false or inaccurate information in imposing her sentence which she had no opportunity to correct.

Lastly, Petitioner is not entitled to habeas relief on her claim that the trial court erred in sentencing her as a fourth habitual offender.  Petitioner does not dispute that she had at least three prior felony convictions.  The fact that she may have not been previously sentenced as a second or third habitual offender is inconsequential.  Petitioner has failed to establish that the trial court violated her constitutional rights at sentencing. Habeas relief is not warranted.

### C.      Reference to Testimony of Absent Witness (Habeas Claim V)

Petitioner asserts that she is entitled to habeas relief because the prosecutor violated her confrontation rights by referencing anticipated testimony from a witness,

Tasha Hardy, who subsequently did not appear for trial.[1]  During opening statements, the prosecutor stated that Hardy would testify that she saw Petitioner hit J.C. Penney employee Wendy Hendryx and then drive away.  At the close of the prosecution's case, the prosecutor informed the court that Hardy would not be called as a witness because, despite arrangements for police to pick her up and bring her to court, she could not be located.  The Michigan Court of Appeals denied relief on this claim, finding that the prosecution acted in good faith and that Petitioner was not prejudiced.  The court further ruled that Petitioner's confrontation rights were not violated because Hardy's proposed testimony was never admitted into evidence.  *August*, 2010 WL 2506721 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper

---

[1]Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the prosecutor's statement.  The Court will address all of Petitioner's ineffective assistance of counsel claims *infra*.

standard).

Although a prosecutor's comments during opening statements may be so prejudicial as to support a finding of constitutional error, *Frazier v. Cupp*, 394 U.S. 731, 736 (1969), there is no error if the prosecutor gives an "objective summary of evidence which the prosecutor reasonably expects to produce," even if events at trial prevent the prosecutor from actually presenting that evidence. *Id.* In *Frazier*, the Supreme Court found that the prosecutor's opening statement reference to witness testimony, which was subsequently not presented at trial, did not constitute prosecutorial misconduct or a confrontation right violation warranting habeas relief. *Id.* at 736-37. The circumstances considered by the Court included: the extent of the prosecution's reference to the witness's potential testimony, the emphasis placed on the witness, the strength of the other evidence presented and the importance of the testimony to the prosecution's case, and the effectiveness of limiting instructions to the jury. *Id.* at 734-37.

The record in this case indicates the prosecutor gave an objective summary of the evidence reasonably expected at trial. Hardy's testimony was not produced because she could not be located despite arrangements for the police to pick her up and bring her to court. This is not a case in which the prosecutor referred to patently inadmissible evidence in an effort to taint the jury. Petitioner has failed to show that the prosecutor's opening statement was improper.

Moreover, even if the prosecutor erred, Petitioner was not prejudiced by the opening statement. First, although Hardy did not testify at trial, the same evidence was

16

presented through other witnesses such as Wendy Hendryx.  Consequently, any

prejudice to Petitioner arising from the prosecutor's reference to Hardy was minimal.

*See United States v. Smith*, 203 F.3d 884, 889 (5th Cir. 2000) (opening statement

referring to witness testimony which was not delivered was not prejudicial where the

promised evidence was presented through alternate sources); *United States v. Hawkins*,

91 F.3d 146, 1996 WL 407261, *4 (7th Cir. 1996) (citing cases).  Second, the

prosecutor's reference to Hardy's anticipated testimony was brief and the failure to

produce her was potentially more prejudicial to the prosecution than the defense to the

extent that Hardy would have corroborated Hendryx's version of events.  Third, the

prosecution presented significant evidence of Petitioner's guilt at trial, including

eyewitness testimony and a surveillance video.

Fourth, and perhaps most important, the trial court specifically instructed the jury

that the prosecutor's opening statement was not evidence.  *See Frazier*, 394 U.S. at 736

("Certainly not every variance between the advance description and the actual

presentation constitutes reversible error, when a proper limiting instruction has been

given."); *United States v. Campbell*, 317 F.3d 597, 606-07 (6th Cir. 2003) (prosecutor's

opening statement, which referred to expected testimony of witness who did not testify at

trial, did not prejudice defendants where jury was instructed that attorneys' statements

were not evidence, and there was no indication that the jury was unable to follow that

instruction); *Meade v. LaVigne*, 265 F. Supp. 2d 849, 860 (E.D. Mich. 2003) (failure to

produce promised prosecution witness was not error where trial court gave cautionary

17

instruction and prosecution presented overwhelming evidence of guilt).  As previously

discussed, jurors are presumed to follow the court's instructions.  *Penry*, 532 U.S. at 799;

*Richardson*, 481 U.S. at 211; *Powell*, 469 U.S. at 66.  Given such circumstances,

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct and/or

that she was prejudiced by the prosecutor's remarks.

Finally, the Court agrees with the Michigan Court of Appeals that Petitioner's

confrontation rights were not violated by the prosecutor's reference to Hardy's

anticipated testimony during opening statements.  The Confrontation Clause guarantees a

criminal defendant the right to confront the witnesses against her.  *Davis v. Alaska*, 415

U.S. 308, 315 (1973).  In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme

Court held that the testimonial statement of a witness who does not appear at trial is

inadmissible unless the witness is unavailable to testify and the defendant has had a prior

opportunity to cross-examine the witness.  In this case, Hardy's statements were not

admitted into evidence at trial.  Consequently, Petitioner's confrontation rights were

neither implicated nor violated.  Habeas relief is not warranted on this claim.

**D.**      **Witness Intimidation (Habeas Claim VI)**

Petitioner asserts that she is entitled to habeas relief because the prosecutor

intimidated a defense witness, Barbara Peavey, into not testifying at trial by threatening

to charge her with perjury and the trial court should have provided Peavey with an

attorney.  The Michigan Court of Appeals described the relevant facts as follows:

18

Here, before the prosecution rested, while outside the presence of the jury, the prosecutor informed the trial court of his concerns regarding Peavey's testimony:

I do believe that it would be appropriate for this Court to advise Ms. Peavey of her 5th Amendment Right against self-incrimination. I do believe in the information I have that either she is going to change the story completely or provide false information when she testifies.... [T]here is a concern that there could be a charge of a false report. There's going to be a charge of false report of material facts in a felony or that there could be perjury charges.

Upon questioning by the trial court, defense counsel then explained that the allegation stemmed from Peavey's statement to an investigating officer that she had actually purchased one of the stolen items for August as a Christmas gift. The trial court then questioned Peavey regarding her desire to testify and advised her regarding her Fifth Amendment right:

THE COURT: All right. Now you're going to be called as a witness in this case in a few minute [sic]. I understand [defense counsel] is going to call you as a witness to testify on behalf of Ms. August. Do you understand that?

THE WITNESS: Okay.

THE COURT: Now, ... the Prosecutor, says to me as he's obligated to do that he thinks I need to talk to you about your Fifth Amendment Right. For example, his concern is this, and that's all it is, that's why we're doing this out the presence of the jury. He's concerned that you might lie up here on the witness stand and if you do, you could be charged with making a false report of a felony and you could be charged with perjury. Okay. So all I'm doing right now is telling you that-

THE WITNESS: I can plead the Fifth?

THE COURT: You can plead the Fifth and not-

THE WITNESS: Then I'm going to plead the Fifth and not testify.

After this exchange between Peavey and the trial court, the court then turned its attention back to the prosecutor to confirm his concerns:

19

> THE COURT: ... [L]ast question is yours essentially. At some point down the road some Appellant Attorney is probably going to say that you dropped this dime on Ms. Peavey as a litigation tactic to chill her testimony and defeat Ms. August's right to call witnesses. So my question for you is, you have an honest good faith basis that Ms. Peavey might be saying these things and you're not saying this just as a technique to scare her off, a tactic to scare her off the stand?
>
> THE PROSECUTOR: No, you honor.
>
> * * *
>
> THE PROSECUTOR: ... In reviewing the video, you can see the sequin shirt there on a hanger.... [W]hen I was provided Ms. Peavey's name, I sent Detective Morningstar out to interview Ms. Peavey. She then represented to ... Detective Morningstar that she bought that ... sequin shirt for Ms. August. But when questioned further by Detective Morningstar, she couldn't provide any other description except that it was black and it was sequin [sic] and that it was a sweater.
>
> * * *
>
> THE PROSECUTOR: So there is a concern there that what's on the video is different then [sic] what's being said.
>
> The trial court then accepted Peavey's invocation of her Fifth Amendment right and excused her from testifying.

*August*, 2010 WL 2506721 at *7-8.

On appeal, the Michigan Court of Appeals denied relief on this claim ruling that the prosecutor acted in good faith and did not intimidate the witness with improper threats, that the witness voluntarily exercised her right against self-incrimination, and that neither the prosecutor nor the court deprived Petitioner of the right to present a defense. *Id.* at *8.

The state court's decision is neither contrary to Supreme Court precedent nor unreasonable application thereof. It is well-established that a criminal defendant has the right to present a defense, which includes the right to present witnesses. *Crane v.*

*Kentucky*, 476 U.S. 683, 690 (1986); *Washington v. Texas,* 388 U.S. 14, 19 (1967). A

defendant's rights to compulsory process and due process of law may be violated if a

witness who is otherwise willing to testify is effectively coerced into invoking his or her

Fifth Amendment privilege against self-incrimination. *Webb v. Texas*, 409 U.S. 95, 97-

98 (1972) (per curiam). In order to establish a *Webb*-type violation, a petitioner "must

show that the contact substantially interfered with any free and unhampered

determination the witness might have had as to whether to testify." *United States v.*

*Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *see also United States v. Emuegbunam*, 268

F.3d 377, 400 (6th Cir. 2001) (no prosecutorial interference with defense witness's

decision not to testify when witness's concern about exposure to potential criminal

liability motivated his decision, not threats by government officials); *accord United*

*States v. Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987) (defendant must show that

conduct of the court or the prosecutor caused witness not to testify). In evaluating the

coercive impact of perjury or criminal liability warnings, a court must consider the

totality of the circumstances, including such factors as the manner in which the issue is

raised, the language of the warnings, the basis in the record for believing the witness

might lie, and whether the warning indicates an expectation of perjury. *United States v.*

*Vavages*, 151 F.3d 1185, 1190 (9th Cir. 1998).

 Having reviewed the record, the Court concludes that the prosecutor's and the

trial court's actions did not violate Petitioner's constitutional rights. The prosecutor

merely informed the trial court of his concerns and the court then advised Barbara

Peavey of the possible consequences if she committed perjury. *Webb* "does not stand for the proposition that merely warning a witness of the consequences of perjury [or exposure to other criminal charges] requires reversal" or other post-conviction relief. *United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007) (quoting *Pierce*, 62 F.3d at 832); *see also Emuegbunam*, 268 F.3d at 400. "To the contrary, 'the government has an obligation to warn unrepresented witnesses of [that] risk.'" *Id*. (quoting *Pierce*, 62 F.3d at 832).

Not all cause and effect is coercion. A trial court has discretion to warn a witness about the possibility and perils of self-incrimination or perjury. *United States v. Arthur*, 949 F.2d 211, 215 (6th Cir. 1991); *see also United States v. Smith*, 997 F.2d 674, 680 (10th Cir. 1993) (judge's comments were within range of discretion given that witness seemed to be preparing to give testimony contradicting prior statement); *United States v. Davis*, 974 F.2d 182, 188 (D.C. Cir. 1992) (no coercion where defendant's testimony would have conflicted with his pre-sentence report statements). To establish a claim of witness intimidation, a petitioner must present "government conduct which amounts to substantial interference with the witness's free and unhampered determination to testify" and must prove that any inappropriate conduct was not harmless. *Stuart*, 507 F.3d at 398 (citing *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997)); *see also Webb*, 409 U.S. at 97-98.

Petitioner makes no such showing. There is no evidence that the prosecutor or the trial court engaged in prohibited conduct. Rather, the prosecutor made the trial court

22

aware of the possibility that Peavey could provide false testimony (based upon her police statement and the surveillance video). The trial court then inquired into the matter, advised Peavey of her rights, and cautioned her about incriminating herself and the possible consequences of providing false testimony. The trial court acted within its discretion. Moreover, while the trial court could have provided Peavey with legal counsel to advise her about her rights, it was not required to do so. Petitioner has failed to establish a violation of her constitutional rights with respect to Peavey's decision to invoke her Fifth Amendment rights and not testify at trial. Habeas relief is not warranted on this claim.

### E.      No Foundation/Chain of Custody for Evidence (Habeas Claim VII)

Petitioner asserts that she is entitled to habeas relief because the trial court admitted evidence – the items taken from the store – without a proper foundation and chain of custody because the items were retained at the store and not secured by the police as evidence for trial. The Michigan Court of Appeals denied relief on this claim, ruling that the argument was abandoned due to Petitioner's failure to cite authority and that the trial court did not commit plain error by admitting the items into evidence. *August*, 2010 WL 2506721 at *8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. As noted, an alleged trial court error in the application of state procedure or evidentiary law is generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68. Such an error does not rise to the level of a

federal constitutional claim warranting habeas relief unless it renders the proceeding "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494 (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne*, 606 F.3d at 871; *Bugh*, 329 F.3d at 512. Petitioner's foundational and chain of custody arguments merely allege a violation of state evidentiary rules. Consequently, she fails to state a claim upon which federal habeas relief may be granted as to this issue.

Moreover, a break in the chain of custody generally goes to the weight of the evidence, not its admissibility. *United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010); *People v. White*, 208 Mich. App. 126, 130-31, 527 N.W.2d 34, 37 (1994). The record in this case indicates that the stolen items were recovered by store employees and placed in a locked storage area at the store until given to the authorities for trial. Petitioner presents no evidence to show that the items were not those recovered during the incident or that they were tampered with or mishandled by the authorities. She has thus failed to show that the trial court erred in admitting the items into evidence or that their admission deprived her of a fundamentally fair trial. Habeas relief is not warranted on this claim.

## F.      Witness Tampering (Habeas Claim VIII)

Petitioner asserts that she is entitled to habeas relief because one witness, Wendy Hendryx, allegedly tampered with another witness, Janell Yonker, by relating her account of events and "putting words in her mouth." The Michigan Court of Appeals denied relief on this claim, finding that Hendryx told Yonker what had transpired while seeking help immediately after the incident, but had no other contact with her, and did

24

not engage in improper conduct or attempt to influence Yonker's testimony. *August*, 2010 WL 2506721 at *9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record indicates that Hendryx's only discussion with Yonker about the crime occurred at the time of the incident. Petitioner fails to present any evidence that Hendryx attempted to intimidate Yonker or influence her testimony prior to trial. It is well-settled that conclusory allegations are insufficient to justify habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *see also Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Habeas relief is not warranted on this claim.

### G.   Time Limit on Jury Voir Dire (Habeas Claim IX)

Petitioner asserts that she is entitled to habeas relief because the trial court limited jury voir dire to just over one hour in order to attend a court luncheon. The Michigan Court of Appeals denied relief on this claim, finding that Petitioner failed to provide a factual basis for her argument that trial counsel was unable to perform a proper jury voir dire and thereby abandoned it. *August*, 2010 WL 2506721 at *10.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Sixth and Fourteenth Amendments to the

United States Constitution guarantee a criminal defendant the right to an impartial jury. U.S. Const. amend. VI, XIV; *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Turner v. Louisiana*, 379 U.S. 466 (1965).  Jury voir dire "is designed to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors." *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).  "No hard-and-fast formula dictates the necessary depth or breadth of voir dire."  *Skilling v. United States*, 561 U.S. 358, _, 130 S. Ct. 2896, 2917 (2010) (citing *United States v. Wood*, 299 U.S. 123, 145–146 (1936)).  Supervision of voir dire is generally left to the "sound discretion" of the trial court.  *Mu'Min v. Virginia*, 500 U.S. 415, 424-27 (1991); *Ristaino v. Ross*, 424 U.S. 589, 594 (1976).  The exercise of the trial court's discretion is "subject to the essential demands of fairness."  *Aldridge v. United States*, 283 U.S. 308, 310 (1931). "The Constitution requires only that voir dire be conducted in a manner which ensures fundamental fairness."  *Dennis*, 354 F.3d at 524.

In this case, the record indicates that the trial court informed the parties of its desire to complete jury voir dire in a prompt fashion, the court and the parties then questioned the prospective jurors, exercised challenges, and ultimately expressed satisfaction with the selected jury.  Petitioner has failed to establish that the trial court erred and/or that she was prejudiced by the time limit on jury voir dire.  Her conclusory allegations of prejudice are insufficient to justify relief from this Court.  Habeas relief is not warranted on this claim.

### H.      Counsel of Choice (Habeas Claim X)

Petitioner asserts that she is entitled to habeas relief because the trial court refused

her requests to fire appointed trial counsel and retain her own attorney.  The Michigan

Court of Appeals described the relevant facts:

> On the morning of the second day of trial, the trial judge indicated that,
> during a brief recess, August had attempted to speak to him; however, he
> told her that such contact was not permitted. It is not apparent on the
> record what August wished to discuss with the judge. Later that morning,
> immediately after the trial judge excused Peavey from testifying, August
> interjected and asked the judge if she could fire her attorney. The trial
> court admonished August that she was not allowed to speak directly to the
> court and suggested that she take a moment to speak to her attorney.
> August and her attorney then spoke off the record, and there is no record of
> what was discussed during this meeting. That afternoon, August testified in
> her defense; notably, she made no further mention of seeking alternative
> counsel. It was not until the sentencing hearing that August again raised
> the issue of replacing her appointed counsel. The trial court essentially
> responded that the matter was moot.

*August*, 2010 WL 2506721 at *10.

The Michigan Court of Appeals then denied relief on this claim finding that

Petitioner did not make a formal motion to substitute counsel and, that even if she had,

the trial court did not abuse its discretion in denying her request "in the interest of the

prompt and efficient administration of justice."  The court explained that the trial was

"well underway" and that there was no conflict of interest or apparent deficiencies by

counsel on the record.  *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  The Sixth Amendment to the

United States Constitution provides for the right to counsel.  U.S. CONST. AMEND. VI.

27

The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent that a defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Moreover, the right to retain counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id*. at 163-64, and against the demands of its calendar. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Additionally, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).

"When a trial court considers a defendant's request to substitute counsel in the middle of court proceedings, the court must balance an accused's right to counsel of choice with the public's interest in the prompt and efficient administration of justice." *Spikes v. Mackie*, _ F. App'x _, 2013 WL 5976098, *11 (6th Cir. Nov. 7, 2013). When a defendant seeks substitution of counsel mid-trial, "he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citing cases).

Similarly, an indigent defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel because an indigent defendant

28

does not have an absolute right to counsel of choice. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004). The United States Court of Appeals for the Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant is so great that it results in a total lack of communication preventing an adequate defense. *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8). These factors are balanced with the public's interest in the prompt and efficient administration of justice. *Iles*, 906 F.2d at 1131, n. 8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The state trial court acted well within its discretion in denying Petitioner's request to retain her own attorney and/or for substitute counsel. With regard to retaining counsel, Petitioner did not show good cause for a mid-trial substitution of counsel such as a conflict of interest, a complete breakdown in communication, or irreconcilable differences. Moreover, while Petitioner indicated that her mother was attempting to retain counsel for her, she did not actually have another attorney present to represent her and her attempts to secure counsel, even if successful, would have interrupted and delayed the trial.

Petitioner has also not shown good cause for the substitution of appointed counsel under the multi-factor test employed by the Sixth Circuit. While the second factor, the adequacy of the court's inquiry, weighs in Petitioner's favor, the other factors do not. The first factor, the timeliness of the request, weighs against Petitioner because her mid-trial request for substitute counsel was untimely. *See Trujillo*, 376 F.3d at 606 (request for substitute counsel made three days before trial was untimely); *see also United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (request for substitute counsel made one and a half months before trial was untimely). The third factor, whether a conflict between counsel and Petitioner was so great that it resulted in a total lack of communication preventing an adequate defense, weighs against Petitioner because she has not shown that there was any such conflict. Petitioner never articulated a basis for her request in the state court, nor has she presented facts to this Court which demonstrate that she and counsel were unable to communicate or work together to present an adequate defense at trial. While Petitioner asserts that trial counsel was ineffective in certain respects, she has not substantiated those allegations – and neither the state courts nor this Court have found those claims to be meritorious. *See* discussion *infra*. The last factor, the public's interest in the prompt and efficient administration of justice, also weighs against Petitioner because the substitution of counsel would have interrupted and delayed the trial and resulted in additional costs to the parties and the court. Petitioner has not shown that substitute counsel was warranted. More importantly, for purposes of

30

federal habeas review, she has not shown that the Michigan Court of Appeals' ruling on this issue was unreasonable. Habeas relief is not warranted on this claim.

### I.     Effectiveness of Trial Counsel (Habeas Claims V, IX, XI, XI, XIII)

Petitioner asserts that she is entitled to habeas relief because trial counsel was ineffective in numerous ways. She claims that counsel was ineffective for failing to object to the prosecutor's opening statement, failing to object to the time limit on jury voir dire, for failing to call exculpatory witnesses, interview and subpoena witnesses, and renew an expired witness list, for failing to present exculpatory video evidence to impeach a prosecution witness, for failing to impeach witnesses, for failing to communicate, for forcing her to testify, for failing to object to witness tampering, prosecutorial misconduct, witness intimidation, the lack of chain of custody and improper evidence, and lost evidence, for failing to request an adjournment, for failing to present exculpatory evidence, for failing communicate a *Cobbs* offer, for failing to review the pre-sentence report with her and present mitigating evidence at sentencing, for failing to object to the scoring of sentencing variables, and for acting unprofessionally. She also asserts that she is entitled to relief based upon the cumulative effect of counsel's errors.

The Michigan Court of Appeals denied relief on these claims, finding that counsel's decision regarding what evidence to present and what witnesses to call were matters of trial strategy and that Petitioner had failed to show that counsel erred or that she was deprived of a substantial defense. The court also ruled that Petitioner's

31

remaining claims lacked merit because the underlying issues lacked merit, because she failed to provide a factual basis for her claims, and/or because counsel's decisions were sound trial strategy. *August*, 2010 WL 2506721 at *5, 7-9, 10-11.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or a fair appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

32

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.*

In this case, Petitioner has failed to show that trial counsel erred and/or that she was prejudiced by counsel's conduct as required under the *Strickland* standard. First, to the extent that Petitioner asserts that trial counsel was ineffective for failing to object to certain matters or otherwise raise the foregoing issues at trial, she is not entitled to relief given the Michigan Court of Appeals' and/or this Court's determination that those claims

33

lack merit.  Counsel cannot be deemed ineffective for failing to make a futile motion or

objection.  *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Second, as to counsel's decision not to request that the entire surveillance video

be played for the jury, counsel may have reasonably determined that further exposure to

the video would taint the jury against Petitioner and/or would not provide exculpatory

evidence for the charged offense.  Counsel's strategic decision is "due a heavy measure

of deference."  *Cullen*, 131 S. Ct. at 1407.  Moreover, while Petitioner claims that

portions of the video would have impeached some of Hendryx's testimony, she has not

shown that the video would have exonerated her or significantly benefitted her defense.

Her conclusory allegations are insufficient to demonstrate prejudice.  *See Cross*, 238 F.

App'x at 39-40; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.

Petitioner has failed to establish that trial counsel was ineffective in this regard.

Third, Petitioner's claim that trial counsel was deficient for failing to investigate

her case, interview witnesses, call witnesses, present evidence, or otherwise prepare for

trial is unsupported.  Well-established federal law requires that defense counsel conduct

a reasonable investigation into the facts of a defendant's case, or make a reasonable

determination that such investigation is unnecessary.  *Wiggins v. Smith*, 539 U.S. 510,

522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356

(6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to

investigate "includes the obligation to investigate all witnesses who may have

information concerning . . . guilt or innocence."  *Towns*, 395 F.3d 251 at 258.  "A

34

purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making such strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to present evidence or call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner has not shown that trial counsel erred or that she was prejudiced by counsel's conduct. The record indicates that counsel consulted with Petitioner during the proceedings, reviewed the case file, and prepared for trial. While trial counsel may not have interviewed certain witnesses himself before trial, he had access to former defense counsel's work and was able to sufficiently question witnesses at trial and present a plausible defense. Trial counsel presented two witnesses (although only one testified), as well as Petitioner's own testimony, in support of the Petitioner's case. Petitioner was not deprived of a substantial defense. Although Petitioner claims that counsel should have interviewed additional witnesses and produced further evidence at trial, she has not provided witness affidavits to establish their ability and willingness to testify and the substance of their potential testimony. Nor has she shown that any uncalled witnesses or

35

additional evidence would have bolstered her defense or affected the outcome at trial or sentencing.  As noted, conclusory allegations are insufficient to establish that counsel was ineffective, *Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771, or to justify an evidentiary hearing on this issue.  *Washington*, 455 F.3d at 733.[2]  Petitioner has failed to establish that trial counsel was ineffective.

Fourth, Petitioner's claim that trial counsel failed to sufficiently communicate with her or properly advise her about a plea offer that she rejected is not supported by the record.  Rather, it appears that counsel met with Petitioner before trial and reviewed the case materials, questioned witnesses about their version of events during trial, presented a defense, and generally advocated for Petitioner.  The record further indicates that the trial court advised Petitioner about the charges against her and her potential sentence prior to trial.  The mere fact that counsel may have spent little time with Petitioner prior to trial "is not enough under *Strickland*, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003); *accord Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same).  Petitioner has not shown that further consultation with counsel would have benefitted her defense.

---

[2]The Court notes that Petitioner may not rely upon new materials that were never presented to the state courts to support her arguments given that the Michigan Court of Appeals adjudicated these claims on the merits.  *See Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011) (ruling that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits").

36

In sum, while Petitioner alleges that trial counsel was unprepared and failed to provide adequate representation in several respects, such allegations are not supported by the record. Petitioner has not alleged facts to show what more trial counsel could have done which would have benefitted her defense or affected the outcome at trial or sentencing. The trial testimony and video evidence provided significant evidence of Petitioner's guilt and she was properly sentenced as a fourth habitual offender. She has failed to establish that trial counsel was ineffective under the *Strickland* standard. More importantly, for purposes of habeas review, she has not established that the Michigan Court of Appeals' ruling to that effect is unreasonable. Habeas relief is not warranted.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on her claims. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability is warranted only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to

37

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  A court may not conduct a full merits review, but must limit its examination to a

threshold inquiry into the underlying merits. *Id*. at 336-37.  Having considered the

matter, the Court concludes that Petitioner has not made a substantial showing of the

denial of a constitutional right as to her habeas claims.  Accordingly, the Court **DENIES**

a certificate of appealability.  The Court also **DENIES** leave to proceed *in forma*

*pauperis* on appeal as an appeal cannot be taken in good faith.  FED. R. APP. P. 24(a).

This case is closed.

   **IT IS SO ORDERED**.


       s/Paul D. Borman       
       PAUL D. BORMAN
       UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2013



      CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each
attorney or party of record herein by electronic means or first class U.S. mail on
December 23, 2013.


       s/Deborah Tofil       
       Case Manager